18-1559 Regents of the University of Minnesota v. LSI Corporation 18-1559 Regents of the University of Minnesota v. LSI Corporation Mr. Albert. Thank you, Your Honor. Michael Albert from the University of Minnesota. I'd like to reserve five minutes for rebuttal. Mr. Albert, on page 28 of the blue brief you say when the United States was a party to the appeal in FMC, the Supreme Court nevertheless applied sovereign immunity in the administrative proceeding. Do you think that in that case a laches defense could have been raised against the United States had, for instance, the United States sat on its claim? A laches defense? Yes. I haven't considered whether a laches would have been applicable in the context. I understand that a laches would be a factor that would take into consideration numerous facts, so I don't know whether that would have been applicable there. The issue we have here, Your Honor, is there are three issues that I wanted to address if I could. First, that under Alden, state sovereign immunity applies unless the action is commenced and prosecuted by the United States. Second, under FMC, sovereign immunity applies to adversarial adjudications like IPR that are between a private party and a non-consenting state. And then third, that under TEJIC, by filing an infringement action in district court, a state does not waive sovereign immunity to a separate action in a separate forum. How would you distinguish our St. Regis decision? Yes, Your Honor. We've held that in the context of tribal sovereign immunity that IPR proceedings are not barred. How is the state sovereign immunity issue any different from the tribal sovereign immunity issue that we decided there? I know we reserved the state sovereign immunity issue, but now what's the difference? The difference is this, Your Honor. The immunity of tribes is a common law doctrine that's subject to the plenary control of Congress. So under Michigan v. Bay Mills, general acts of Congress presumptively apply to tribes, and under the Tuscarora case as well. For example, tribes do not have constitutional immunity from any adversarial adjudications to which they didn't consent at the founding. And the Alden test, which- But that's not the reasoning of the St. Regis case. It didn't depend on this being a generally applicable statute. Well, at page 1329, this court in St. Regis held or addressed the question of whether Congress contemplated tribal immunity to apply. So by assessing what an IPR was and concluding that it was a hybrid proceeding, the court then applying the lower standard applicable to the waiver of or to the abrogation of tribal immunity was able to conclude that Congress did not contemplate tribal immunity to apply. But what Congress contemplated is not the question here, because state immunity is not within the plenary control of Congress to abrogate the way tribal immunity is. And so St. Regis, as Your Honor noted, didn't reach the question here. But its reasoning is actually instructive and leads to a different outcome for states, because St. Regis determined that IPR is a hybrid proceeding and thus not strictly a government enforcement action. Now, under Alden, for sovereign immunity not to apply in the state context, it would have to be an action commenced and prosecuted by the United States. And likewise under FMC. Well, let me give you a hypothetical. And it's purely, truly a hypothetical. The University of Wisconsin manages to slip through a patent covering beer. Come football season, the University of Minnesota is selling beer at their football games in violation of a patent. And Wisconsin sues in the Supreme Court, the case being styled Wisconsin v. Minnesota. And within one year, I'm going to give you two legs to this. Within one year, Minnesota files an IPR. Would Wisconsin be able to assert sovereign immunity against that IPR? And separately, supposing the PTO itself looks at that patent and says, we issued a patent on beer. We can't do that. And they institute it themselves. Sovereign immunity? So picking up on the second element of that first, Your Honor, that is a critical distinction. We don't deny that the PTO itself can institute sua sponte reexaminations. But process matters here. And what the Supreme Court held in SAS is that what Congress created through the reexamination process is an unconstructed adversarial proceeding. And that's precisely what Alden and FMC have determined cannot. Do states enjoy sovereign immunity in reexam proceedings? In an ex-party reexamination, no, Your Honor, the state would not. Because at that point, there really is a reexamination. How about an inter-parties reexam? Inter-parties reexamination presents a closer question. But I would say even there, a critical distinction between inter-parties reexamination and inter-parties review is that under Magnum Oil, this court held that in IPR, the board does not have plenary control. In other words, it's not reconsidering the patent as a whole. So no sovereign immunity in inter-parties reexam? Well, inter-parties reexam. No, no. What's the answer? I would say no, Your Honor. But it is a closer question. But in inter-parties reexamination, there is a significant role still for the petitioner. But in IPR, what's clear is that the board does not have the authority to determine what the issues are, to formulate the arguments. But your problem is that we went through all of this in St. Regis and distinguished the FMC case and held that there was no tribal sovereign immunity. And I'm having difficulty in seeing why the reasoning of that, while limited in context to tribal sovereign immunity, doesn't apply equally to state sovereign immunity. The difference, Your Honor, is that a hybrid case, which is what this court determined that an IPR was in St. Regis, is sufficient to overcome tribal sovereign immunity, which is subject to the plenary control of Congress. It's not sufficient to overcome state immunity, which is constitutional. For state immunity, IPR would have to fall squarely into the commenced and prosecuted by the U.S. government category. Let's back out to the 10,000-foot view. Here's the university, engaged in what seems like business activities, pursuing its patent rights, under traditional notions of fair play. If a state sues civilly in the patent context, why shouldn't it be put to the choice between allowing all lawful means of dealing with a claim or not pursuing the patent? Well, if it's a policy question, Your Honor, what the Supreme Court held in College Savings Bank is that state discretion is not to be expected. But as a practical matter, we're not denying that the patent can be reconsidered. There are any number of ways. The appellees have the ability to defend in the district court, which is the forum in which the state brought the action. And for that matter, as I answered to Judge Sykes' question a moment ago, the patent office itself... But that's the whole purpose of the AIA. Right. But the structure that Congress created, as SAS described it, is an adversarial one. And that's the distinction that's critical here, because the process that's used for determining whether the patent is validly issued or not is critical to the state sovereign immunity question, as long as it's a proceeding commenced and prosecuted by the private party.  But the AIA process was based on very particular statutory language. It wasn't based on constitutional premises and the like. And when the constitutional issue of whether this was the AIA proceedings were more like civil trials or more like administrative proceedings was put to the Supreme Court in oil states, they determined it wasn't sufficiently adjudicated for the Seventh Amendment to apply. Right. Oil states, Your Honor, simply determine the question of whether IPRs could be adjudicated in an Article III forum or an Article I forum. Because they're public rights, they can be adjudicated in an Article I forum. That doesn't answer the question that's presented here, which is whether the government in either forum has the power to compel a non-consenting state to appear. Well, the state's not compelled to appear. There's no requirement that the state appear, right? Well, that's an argument that appealed. Isn't that true? No, Your Honor, we would respectfully disagree. How is the state compelled to appear? In several respects, Your Honor, as the court held, in fact, in FMC, that same question was presented. And the court there said that to pretend that it's not coercive would be to blind ourselves to reality. Likewise here, if the state fails to participate in an IPR, it loses. But in the FMC case, there was process issued to the state, right? And here, there's no process. There's no compulsion. In fact, statute clearly contemplates that there could be a situation in which the patent holder decides not to litigate. In this case, if the patent owner fails to appear, it gives up substantive rights. It gives up the right to argue that there should be no institution. But it may be true as a practical matter that the state's interest requires that it appear. But there's no compulsion. Well, we would argue, Your Honor, that there is. Because just as in FMC, if the state fails to appear, it can effectively be defaulted as intervener's brief points out. But that's not true. The director still has to make the threshold determination to institute the IPR in the first place. And then the PTAB still has to make the determination that the patents aren't valid. You don't default by not responding. That's the obligation of the director and the PTAB to still make a finding on. So under the rules, and this has happened as intervener's brief acknowledges, the PTAB has determined that failure to appear, if we didn't file our mandatory notices within 21 days, that can be deemed an abandonment of the contest. Failure to appear and participate in the process can result in effectively a default. Furthermore, even after the institution phase, failure to appear gives up the substantive rights to argue the defenses that are available, many of which the board can't determine for itself. For example, the board could not determine whether there's a statutory one-year bar. The board could not determine whether all the real parties in interest have been properly named. Those are facts that can only be brought to bear by the state. And what FMC points out is that in those situations where effectively the state would stand defenseless if it did not appear, it is being coerced into participating. A line has been drawn here by Congress in creating the IPR process, and they chose to create it in such a manner that it is an adversarial adjudicatory proceeding. Why isn't it like an in rem proceeding? Like under the Deep Sea and Hood cases, why isn't this an in rem proceeding? Because no process is issued to the state, no monetary liability attaches. Why isn't it just an in rem proceeding about the validity of the patent? A couple of reasons, Your Honor. In Deep Sea, for example, it was not the property of a particular party. It was the property that was being brought to the court for an adjudication in rem. Here, there's no question that the patent belongs to the state. And not only that, but the state is being subjected to various potential losses of rights, including the estoppel effect. So, for example, at the end of an IPR process, the state is the patent holder. I don't know whether it affects the property that's claimed by the state, but that's the nature of in rem proceedings, that they do affect property rights. Well, it would only be an in rem proceeding, and several courts, and we've cited them in the briefs, have held that IPR is not an in rem proceeding, as did the Court below. But in Deep Sea, the property itself is brought to the court, not in the possession of a particular entity. Otherwise, that would be too easy a way for Congress to simply get around sovereign immunity. How do you possess a patent? There's no physical possession of a patent. It's a right. Under that theory, Your Honor, it would be very easy to circumvent sovereign immunity by simply going to a court and saying, I'm not suing the state of Minnesota. I'm just seeking to bring an in rem proceeding against its bank accounts or its real estate or something else that's registered. I don't see that. I mean, that is essentially monetary liability. There's no monetary liability here, right? There's no monetary liability per se, but there are losses, including the estoppel effect that occurs at the end of the IPR process, where the state can then no longer file for claims that are patently indistinct,  One of the amicus brevis mentioned writs of Siri Fascius. Where does that play in? We didn't think that that was applicable in this context, Your Honor. I think that their theory is that you looked at English practice and that this was a way of challenging a patent right. Because the patent courts in England were equitable in effect. Yes, Your Honor. And they also cited the concept of the Privy Council. None of those examples, however, show that there was ever a historical example in which those rights were used against the sovereign. So a sovereign simply was not at the time of the founding subject to having its property rights in a patent taken away in this manner. And that's the fundamental defect here in the procedure. The sovereign didn't have any patent rights, right? Exactly, Your Honor. And that's why unless there was a procedure as FMC held that was known at the time of the founding, it is not one that the states gave up. The states are co-equal sovereigns. And they simply, unlike Indian tribes, did not give up their sovereign immunity to Congress. And so unless the proceeding is one, as FMC held, that was known at the time of the founding. But the ability, the ability of the sovereign to revoke a patent because it was not, because it was improvidently granted did exist before the time of the founding. No question about that, Your Honor. But that, the question is, what is the process by which that can happen? And it cannot be done by an administrative adjudicatory proceeding initiated by the petitioner. The parties have to be identified. But you've conceded that the government itself can do that, that is the PTO. Well, Your Honor, that's precisely the disagreement that occurred in FMC between the dissent and the majority. In Justice Breyer's dissent, he said the commission itself could have brought the proceeding. And the majority said that's true, but it didn't. And that's the key distinction, and it's exactly on point with what we have here. Process matters. Even though the government itself could have brought this proceeding, it didn't. It was not named as a party. It was not even named as a real party in interest here. It simply did not commence or prosecute the proceeding as SAS describes what an IPR is and as the statute describes it. I see my time is up. We'll give you 10 minutes for rebuttal. Thank you, Your Honor. Mr. Reed. Good morning, Your Honors. May it please the Court. Christopher Reed on behalf of Appellees LSI Abago and Erickson. Your Honor, as you intimated in your questions, the St. Regis decision decides this appeal. The same factors that convince the Court that immunity applies in the tribal context also apply in the state immunity context. In particular, the Director's role as a gatekeeper and the fact that the Board's authority to proceed in the absence of the parties are factors that have equal relevance in the state context as in the tribal context. In the LSI brief, since you're representing both, on page two you say the Court lacks jurisdiction because the University's interlocutory appeal is not right. Are IPRs interlocutory in nature? IPRs, no, but the collateral order doctrine is interlocutory in nature, under which it was appealed. Is that issue now moot because there was a final decision? I'd say the issue is not moot in that there was a final decision below. Okay. On page five, again, of the LSI brief, footnote one, you say the University fails to inform the Court that LSI moved to dismiss the complaint because, inter alia, the allegation was fabrication and that the University never provided LSI with any notice of the 601 patent before filing suit in August 2016. What supports that statement? I assume you're going to tell me it's true. It is true. So what in the record supports that? On the original complaint they brought, they said that we gave notice to LSI. Right, and you say they never did. We went back and said that's not true to the district court. In response to that, they amended their complaint to withdraw the allegation. Okay. But what they cite in their appellate brief is to the original complaint. That's why we made the comment. I see. I see what you're saying. Okay. On page 56 in the Erickson brief, you say the University insisted that if it ever enforced the patent by filing an infringement action, it could be deemed to have waived its sovereign immunity in the IPR process. Where's that in the appendix? Well, that goes to the appendix itself. I'm not sure if that decision was included, but that references the reactive surfaces decision. And I can give you the cite for you in just a second. But in the reactive surfaces decision, the… But where did they insist it? Well, it was in their response to the board evaluating this very concept. And they said, well, in this situation, we have not filed an infringement complaint. And because we haven't filed an infringement complaint, that weighs in favor of finding sovereign immunity here. But if we had, if we had filed an infringement complaint, then we could have been deemed to have waived our immunity. In fact, they cite the biomedical case in that same thing. They say in biomedical, it says there's no bright line rule that you can't waive immunity with respect to an IPR if you file an infringement complaint. That was their position. That was their position then. It's our position now. And that's the correct position. I wish you could cite me to something in the record. Go ahead. Well, I could cite you to the reactive surfaces decision. I understand. I understand that. But I'd sure like to see that argument. Understood, Your Honor. So moving beyond that, moving to the other comments that were made in terms of the St. Regis decision. And let's talk about FMC because they continue to maintain the FMC decision weighs against finding there's no sovereign immunity here. But the FMC decision on which they rely, of course, which the St. Regis court found instructive, was a state sovereign immunity case. And the St. Regis panel looked right at that decision, looked right at the decision and still concluded IPR is more like an agency enforcement action than a civil suit brought by a private party. And of particular importance here is that. We relied very heavily on FMC in St. Regis. That's exactly correct. And especially important is the portion of FMC where the Supreme Court pronounced that the commission in FMC would be free to investigate alleged violations, quote, upon information supplied by a private party without implicating state sovereign immunity. And as recognized in St. Regis, that last scenario describes IPR. IPR is effectively a federal agency taking a second look at a prior administrative grant based on information supplied by a private party. So FMC supports the decision in St. Regis as the St. Regis court found. Now, even if the IPR. That's true, although doesn't SAS kind of tug at that a little bit in the sense that it doesn't, once the director undertakes the relook, allow plenary review. It requires it to be based upon the petitioner's private petition. And so it's not a complete re-exam like under a re-exam statute. It's more like a case brought by the petitioner than the PTAB adjudicates. Well, it certainly is guided by the petition. That's what SAS held. But at the same time, the discretion forwarded to the director in that situation as to whether it proceeds at all is still complete. If the director decides it goes forward, it goes forward. If he decides it doesn't, there is no review. There's no appeal. Irrespective of what grounds were raised in the petition. And so that was the distinction the court identified in St. Regis, and that same thing applies here. But even if it was closer to civil litigation than it is, Your Honor highlighted the fact that this is an NREM proceeding. And that's important here. Now, they tried to distinguish the Deep Sea Adventure case by saying that just because in Deep Sea Adventure the race involved was not in the possession of the state. But they didn't distinguish the Tennessee v. Hood case. And that wasn't dealing with something physical that was or was not in the possession of the state. That was dealing with debt. And the Supreme Court found in that particular instance that the question of whether NREM adjudication is similar to civil litigation in a district court loses relevance when you're talking about NREM. In particular, when the NREM jurisdiction permits it to determine all claims that anyone, whether named in the action or not, has to the property or thing in question. Well, that describes the patent. In IPR, there is no exercise of personal jurisdiction. There is no monetary remedy. There is no injunctive remedy against the patent holder. In other words, liability in IPR, like in the Tennessee case, turns only on the nature of the race, the patents. And the only remedy affects the race, cancellation of the patent claims. Or not. Or not. So the Supreme Court's rationale in Tennessee v. Hood provides additional confirmation that the St. Regis panel got this correct. But even if we were to go away from St. Regis, which we shouldn't, even if we look beyond that, there's a second independent ground. And that's the basis on which the board below found and denied, found that there was no sovereign immunity and denied the university's motion to dismiss. And, of course, that's waiver. Now, the university finally sued on these patents. That holding seems to be itself, in a way, in tension with St. Regis because it's suggesting somehow that the IPR and the district court proceeding are one and the same. And that there's a waiver with respect to the IPR by bringing the district court infringement action. Well, I wouldn't say that it characterizes them as being one and the same. It was motivated by the rationale in the Knight decision that when you bring a district court litigation, any defensive measures that you render compulsory by that decision fall under the scope of that particular waiver. But how is an IPR compulsory? Because you waive it. Well, the IPR... If you don't do anything with it, you waive it. The Knight decision said compulsory in the sense that you're forever barred from bringing it if you don't bring it in response to that particular infringement complaint. That's the exact same scenario with an IPR request. Under 315B, if you don't file that IPR request within one year of being served with a complaint, you're forever barred from bringing that IPR request. Well, you may be barred from an IPR, but you're not barred from raising invalidity contentions in the district court action. That's correct, but there are substantive and procedural differences between requesting the government to take a second look at the patent and raising invalidity defenses in the district court that are important here. In particular, you have the lower preponderance of the evidence standard. You have a panel of judges who have subject matter expertise and can be assigned based on their technical expertise. And you have a statutory timeline, which is why Congress said the IPR was intended to be an efficient and effective alternative to invalidity in district court. And so you can't say that bringing in district court invalidity action is the same as an IPR. Those are very different. And so, again, the university takes the position, and I'll just close on this, that the forum is sacrosanct. This court in biomedical said that's not correct. Said there is no bright-line rule that the forum is sacrosanct. Now, we agree that IPR may not fit neatly in a pre-existing waiver box here, but if you look at the rationale in the BASCAT decision that you invoke the entire statutory process, if you look at NYE, where it talks about compulsory claims, if you look at biomedical where it says there's no bright-line rule, and you overlay all of that with Lapidus, which says you can't use sovereign immunity as a sword and a litigation tactic, all of those decisions in combination compel the conclusion that their waiver by filing a litigation in Minnesota includes the IPR. Thank you, Your Honors. Okay. Thank you, Mr. Reed. Mr. Mortera? Thank you, Your Honor. May it please the court, I have limited time, so first I'd like to get out of the way the Bay Mills laws of general applicability argument. My friend made laws of general applicability or general laws frequently do also bind the states. The Fair Labor Standards Act, in fact, binds the states. The question of sovereign immunity is not what law binds someone. It's who can enforce it. The United States can, of course, enforce the Fair Labor Standards Act against the states, but a private party cannot. The court in Bay Mills clearly held that Congress has to clearly express an intent to abrogate common law tribal sovereign immunity, and there's no difference between state sovereign immunity and tribal sovereign immunity in this regard, and so St. Regis does control, and I won't belabor St. Regis any further. I want to focus on the second requirement of sovereign immunity. The first is that there be a suit by a private party, and St. Regis talks about the involvement of the director and how the superior sovereign's involvement eliminates sovereign immunity. The second requirement, though, is coercion, and as Judge Hughes alluded to, there is no coercion here, and as Judge Dyke said, patent owners do not need to participate in IPRs at all. They certainly don't need to file POPRs, and for instance, in our petitions, no POPR has been filed yet. Are you directing yourself to the in rem aspect of this? It's sort of the same thing, right, in the sense that, as you noted, there's no service of process and there's no compulsion to appear, but there's the other part of coercion that's noted in Alden. It says defend or default, and it's noted again in FMC, where if the state did not appear in the Federal Maritime Commission, a default judgment could have been entered against the state, monetary penalties could have been imposed, and then the state would have stood defenseless should the attorney general have subsequently decided. The big difference from the in rem perspective of the FMC case is that there was monetary liability there and an injunction against the state entity, and that can't happen here. Exactly, an injunction saying that the state had acted unlawfully in violation of federal law, which is the very indignity the court has time and time again focused on with respect to state sovereign immunity and is not present here. And my friend said something to the effect of it's practical consequences. That is not true. In FMC, the default was the inability to defend oneself on the merits, no one ever having looked at the merits. What should go on in the PTAB when a patentee does not appear is exactly what Judge Hughes said. The PTAB should still critically evaluate the petition just like it does in ordinary examination. Interpartist review brings to bear the same agency expertise as exists in initial examination. Those are not my words, those are the words of the concurrence in St. Regis. The PTAB should critically look at that patent and in fact has no power to issue what it purports to be doing, which are these default judgments under 37 CFR 42.73. The PTAB does not have the power to enter these default judgments and because they don't, there is in fact no coercion. If Minnesota chooses not to appear, chooses not to file a POPR, there may very well not be institution in any of these matters that are still subject to potential institution. The PTAB just recently did not institute a petition against the St. Regis Mohawk tribe just a couple weeks ago where the Mohawk tribe did not in fact file a POPR. So that's step one. At step two, if Minnesota chooses not to file anything in the PTAB, the PTAB should critically evaluate the patent, perform its job, and decide whether the claims are unpatentable. Only then should a cancellation certificate issue. My friend also alluded to the estoppel provisions that flow from 42.73 and the adverse judgments. Those would not exist if the PTAB cannot enter that default judgment in the first place. Only the claims would be canceled. It would look very much like an ex-party re-exam to which everyone agrees there is no sovereign immunity. Separate and apart from the role of the director and the logic of St. Regis, and related to but also separate from the NREM discussion Judge Dyke has had, there is a third reason no sovereign immunity exists here. No one is coercing the University of Minnesota to participate in these proceedings. Thank you. Okay, thank you. Ms. Dixon. Good morning. May it please the court, as my colleagues have said, and as we say in our brief, we think that St. Regis controls this case. It held that when the director of USPTO institutes inter partes review, it's the United States acting in its role as a superior sovereign to reconsider its prior grant of a patent. Neither states nor Indian tribes have immunity against the United States, so we think a clear application of St. Regis controls here. I'm happy to answer any questions that the court has for the government specifically, but otherwise you've heard from a lot of counsel this morning, so I don't have anything further to add. Okay, thank you. You submitted a good brief, though. It was well done. Thank you. Mr. Howard. Thank you, Your Honor. If I could pick up with the issue of coercion. This is exactly the situation that existed in FMC. Here the state, just as in that case, is coerced into defending, because as the Supreme Court said in FMC, a failure to find that to be coercion would be blinding ourselves to reality. Here failure to participate in the IPR process would irretrievably give up the state's ability to defend against the patent. Gilead's counsel alluded to the notion. That's not true. If the director decides not to institute, then you have your patent, and you can assert it in district court, and you can defend against any inability challenges in district court. Yes, if it comes out that way, that's certainly true, Your Honor. But what the state gives up is the ability to raise defenses and arguments, some of which, contrary to my friend, are not things that can be raised by the board itself. Again, examples of that would include the time bar and the real party in interest issue. Sure, but you're not going to get a default judgment against you in an IPR. Well, actually, Your Honor. The board can't. Well, yes, Your Honor. Under Rule 73, we would respectfully suggest that that is equivalent to a default judgment. The failure to appear can be deemed under that rule to be an abandonment of the contest, and that has happened in the A.J. Skimp case, which is cited in Gilead's brief, as well as in a case called FANUC v. Detracto, which is IPR 2016-01047. But the board and the director still have to make their own independent determinations under the statute. As the FMC would have had to do in that case, and yet the Supreme Court said that simply in an adversarial process, taking one of the adversaries out of the picture leaves a situation in which the state stands defenseless to use the Supreme Court's language, and that's what we have here. The board may be required to make a decision on the merits, but it's deprived of information from which it can make that decision, and that is tantamount to coercion on the state to appear and participate in the process. Otherwise, the state could effectively be deprived of its sovereign immunity. But none of the relief that was at issue in FMC could be awarded in an IPR proceeding. Well, portions of it, with all respect, Your Honor, are. So two things, for example, that are analogous would be the deprivation of property, in this case the patent, and another one would be the estoppel effect, which is against future patents. You cannot have monetary liability, correct? Correct, Your Honor. No monetary. And you cannot have a cease and desist order against the state or its officials, right? Right, Your Honor. But there are other deprivations of state property that take this outside the scope of what can be done by an administrative adjudicatory proceeding. It can be done in other ways. The state, the U.S. government itself can bring the action. But the fact that it's a private petitioner who prosecutes IPR is dispositive here. I mean, under Magnum Oil, this court held that the board cannot advance its own arguments. And under SAS, the Supreme Court held that the board has to pursue arguments advanced by the petitioner. So the board can't add and it can't take away. It's the petitioner who prosecutes the claim. And that under Alden makes it unconstitutional for states, not for tribes. I think we're out of time. Thank you, Your Honor. Thank you, Mr. Howard. Thank all counsel. The case is submitted.